IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHUCK E. WITMER, SR., | : | CIVIL ACTION NO. **1:08-CV-1329** |
| | : | |
| Plaintiff | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| ARTHUR J. GALLAGHER & CO., | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On July 14, 2008, the Plaintiff, Chuck E. Witmer, Sr., filed, *pro se*, this age, race and gender

discrimination action, in part, pursuant to Title VII of the Civil Rights Action of 1964, 42 U.S.C.

§ 2000e, *et seq.* (Doc. 1 and Doc. 5, Ex. A). Plaintiff also asserts several Pennsylvania state law

claims. Plaintiff paid the filing fee. Plaintiff's Complaint consists of about 38 typed pages and one

hundred nineteen paragraphs. Defendants are Arthur G. Gallagher & Co. ("AGC"), Gallagher

Bassett Services, Inc. ("GBS"), Dean Snyder, and Martin Essig. The Summons was issued on July 14,

2008, and provided to Plaintiff for service on Defendants. On July 14, 2008, Plaintiff sent all

Defendants a copy of his Complaint *via* certified mail-return receipt requested. (Doc. 3). There is

no record that Plaintiff sent Defendants a Notice and Request to Waive Service of a Summons

under Rule 4(d). (Doc. 3 and Doc. 5, Ex. B).

On August 5, 2008, in response to Plaintiff's Complaint, Defendants jointly filed a Motion

to Dismiss the Complaint in its entirety under Rules 12(b)(5) and 12(b)(6). (Doc. 5). Defendants

also state that ¶1. of Plaintiff's Complaint, Statement of Claim, which is over 4 pages and contains

no numbered subparagraphs, should be stricken under Rule 12(f) for failure to comply with Rules 8(a)(2) and 10(b).  (Doc. 5, pp. 7-8).  On August 15, 2008, Plaintiff filed a "Motion in Response to Defendant's (sic) Motion to Dismiss" and his "Brief in Support of Plaintiffs (sic) Motion to Allow Lawsuit to Survive" with attached exhibits (Exs. A and B, Plaintiff's April 17, 2007 EEOC charge of age discrimination and retaliation against Defendant GBS).  (Docs. 6 and 7).[1]  Defendants filed their Brief in support of their Motion to Dismiss on August 15, 2008, with attached exhibits.  (Doc. 8).[2]

Defendants' Motion to Dismiss is ripe for disposition.[3]  To date, there is not any record indicating that discovery has been conducted.

As Plaintiff recognizes (Doc. 1, ¶ 8.), this Court has jurisdiction over his action pursuant to 28 U.S.C. § 1331.  This Court can exercise pendent jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  *See Zahavi v. PNC Financial Services Group, Inc.*, 2007 WL 3053090, *1, n. 1 (W.D. Pa.).

## II.  Allegations of Complaint.

Plaintiff alleges that he is "an American white/part American Indian male", and that he was employed by Defendant GBS as a claims supervisor.  Plaintiff states that he worked  in Defendant

---

[1]We construed Plaintiff's stated Doc. 6 as his Response to Defendants' Motion to Dismiss and his Doc. 7 filing to be his opposition Brief.

[2]Even though we were only considering Plaintiff's Complaint under the standard for a Motion to Dismiss, we were allowed to consider documents referenced in Plaintiff's pleading upon which his claims are based, such as Plaintiff's EEOC filings.  *See Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[3]The undersigned was referred this case on January 7, 2009, for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1).    Doc. 9.

GBS's Mechanicsburg office, from September 13, 2004 through May 1, 2006, when he "resigned his employment with [GBS] reasonably believing that he was constructively discharged."   Plaintiff was assigned to supervise only one client, Everest National Insurance Company ("Everest"). Plaintiff avers that on May 1, 2006, despite his "history and record of regular salary increases and positive reviews," Defendants GBS, Snyder and Essig "demoted" him and changed his job duties without cause, which deceased his level of responsibility and authority, and caused a reduction in his pay.  Plaintiff avers that he was "degraded and treated in [a] manner that was verbally abusive, ... to the extent that he felt pressured into resigning." (*Id.*, ¶'s 1., 11., 16.  and 20.).   Plaintiff states that all terms and conditions of his employment were governed by Defendant GBS and Defendant AGC.  (*Id.*, ¶ 13.).[4]   Plaintiff alleges that he was told his demotion was a result of Everest's request that the entire GBS team that worked on its "Program" be removed.  However, Plaintiff avers that he was the only one removed from Everest's Program.

Plaintiff also alleges as follows:

21.  At all relevant times, prior to Plaintiffs (sic) "demotion" Plaintiff tried to get Defendant Gallagher Bassett Services, Defendant Dean Snyder and Defendant Martin Essig to reassign him to another open Supervisor position within the Harrisburg/Mechanicsburg, Pennsylvania office as there was a position open at the time of Plaintiff's inquiry.  Defendant Martin Essig acknowledged the open position.  Defendant Martin Essig told Plaintiff only weeks before the Plaintiff's demotion, that Plaintiff was "too" valuable to his client EINIC [Everest] and would not be considered for the open supervisor position located at the Branch location.

---

[4]Plaintiff's April 17, 2007 EEOC Charge indicated that he was 53 years old at the time he was allegedly constructively discharged by Defendants.  (Doc. 7, Ex. A).  Also in his Complaint, Plaintiff avers that when he filed his Charge with the EEOC, he was 53 years old.  (Doc. 1, ¶ 10. A.).

22.  Upon information and belief, Defendant Gallagher Bassett Services, Defendant Dean Snyder and Defendant Martin Essig conducted the demotion process in such a manner as to intimidate, embarrass and demean Plaintiff.

23.  Upon information and belief, on May 1st, 2006 without prior Notice, Defendant Gallagher Bassett Services, Defendant Dean Snyder and Defendant Martin Essig assigned Plaintiff to desk with a large open pending and with numerous files that were not being attended to.  The location was known as "extension 237" which included bilingual phone contact, skills that Plaintiff does not possess.

24.  Upon information and belief, Defendant Martin Essig admitted that the decision was made to "demote" the Plaintiff without having a temporary or permanent placement for the Plaintiff.  In other words, they were just placing the Plaintiff at a desk location until a decision was made as to what to do with the Plaintiff.  Defendant Martin Essig knew or should have known that his actions were false and motivated by self-interest.

25.  Upon information and belief, Defendant Martin Essig admitted that he after discussing the demotion with "others" made the decision to demote the Plaintiff from a supervisory position to a senior claims position and did not demote the Plaintiff because of the Plaintiffs (sic) performance as a supervisor.  Therefore, Plaintiffs (sic) demotion was without cause.

(*Id.*, ¶'s 21.-25.).

Plaintiff avers that Defendants knew their conduct was "fraudulent, illegal and did not conform to federal law."  (Doc. 1, ¶ 1.).

Plaintiff further alleges as follows:

As a result of the Defendants (sic) unlawful and discriminatory conduct and employment practices and violations of Plaintiffs (sic) rights protected by Federal Law, he was forced to seek constructive discharge as the only remedy avenue available to him on May 1st, 2006.  Plaintiff now seeks injunctive relief; monetary damages, including back pay, front pay, if applicable, compensatory and punitive damages; fees and costs, pursuant to Title VII of the Civil Rights Act of 1964, as

> amended, 42 U.S.C. Sections 20003, et seq.; the Civil Rights Act of
> 1866, as amended, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A
> and 42 U.S.C. Section 1988.  Plaintiff also brings tort and contract
> claims under the common law of Pennsylvania.

(*Id.,* ¶ 1.).

Plaintiff indicates that all terms and conditions of his employment were governed and controlled by Defendants AGC and GBS.  (*Id.,* ¶ 13.).  Plaintiff does not state that he had an employment contract with Defendants.

Plaintiff states that, prior to his federal court action, he exhausted his administrative remedies by filing a formal Charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") for "age discrimination" and "retaliation." (*Id.,* ¶ 10.).[5]

In his First Cause of Action, Plaintiff alleges that, as a "white American male/part American Indian" over 40 years old, he was a member of a protected class, and that Defendants GBS and AGC violated "Title VII's prohibition against age discrimination in employment based, ..., upon an employee's age." (*Id.,* ¶ 29.).  Plaintiff also asserts that Defendants' alleged conduct violated his rights under 42 U.S.C. § 1981.

Plaintiff further alleges as follows:

> Plaintiff, as a white American male/part American Indian adult employee
> in excess of 40 years of age and an employee of Defendant Arthur J.
> Gallagher & Co., Defendant Gallagher Bassett Services, was therefore
> treated in a disparate manner and was subjected to Defendant's unfair
> policies and practices insofar as that he was treated in an unequal manner
> and unlike younger employees similarly situated with the Defendants.  Said

---

[5]*See also* Doc. 7, Exs. A and B.

> unfair practices; demotion, reduction in salary, reduction in job responsibilities, reassignment to a bi-lingual desk, reassignment to a menial or degrading work, badgering, harassment and humiliation by Defendant Arthur J. Gallagher & Co., and Defendant Gallagher Bassett Services limited Plaintiff in his wages and other benefits because of his age, and further resulted in Plaintiff seeking constructive discharge from employment on or about May 1, 2006.

(*Id.*, ¶ 32.).

In his Second Cause of Action, titled "[Defendants AGC and GBS]- violation of Title VII's prohibition against employment discrimination racial discrimination disparate impact," Plaintiff claims that that, as a "white American male/part American Indian" over 40 years old, he was a member of a protected class, and that Defendants discriminated against him based on his age. Plaintiff alleges that Defendants AGC and GBS use age bias in making their employment decisions, and that this conduct negative impacts protected class employees. Plaintiff alleges that Defendants AGC and GBS deprived him of equal employment opportunities due to his age. (*Id.*, ¶'s 41.-47.).[6]

In his Third Cause of Action, titled "[Defendants AGC and GBS]- Breach of Contract and/or Promissory Estoppel," Plaintiff alleges that Defendants AGC and GBS, contrary to their representations and employment policies, upon which he relied, discharged him without cause, without investigation, and without an opportunity to be heard. (*Id.*, ¶'s 50.-62.). Plaintiff avers that Defendants AGC and GBS breached their promises to employees by failing to abide by their written policies, including the policy not to discriminate against employees and the policy to properly

---

[6]Plaintiff correctly recognizes that there is no individual liability under Title VII since he only asserts his two Title VII claims (First and Second Causes of Action) against Defendants AGC and GBS. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F. 3d 1061, 1078 (3d Cir. 1996), *cert. denied*, 521 U.S. 1129 (1997); *Marion v. city of Phila./Water Dept.*, 161 F.Supp.2d 381, 384 (E.D. Pa. 2001).

investigate claims of discrimination.

In his Fourth Cause of Action, titled "Negligence," Plaintiff alleges that all four Defendants breached their duty of care owed to him "to prevent their employees from acting in any way to harm an employee," and to ensure that complaints of age discrimination were properly investigated. (*Id.*, ¶'s 67.-68.). Plaintiff also alleges, in part, that Defendants breached their duty of care owed to him by failing to train their supervisory employees to prohibit discriminatory practices, by failing to supervise employees to prevent them from improperly handling discrimination complaints, by failing to take remedial action to correct improper handling of discrimination complaints, and by failing to follow their own employment policies. (*Id.*, ¶ 70.).

In his Fifth Cause of Action, Plaintiff claims that Defendants GBS, Snyder and Essig intentionally inflicted emotional distress ("IIED" claim) upon him by subjecting him "to a pattern of age discrimination, retaliation and misconduct in the workplace based ... on his age" and based on his complaining to Defendants about the improper acts. Plaintiff also alleges that despite Defendants' knowledge that the accusations against him were unfounded, they allowed him to be reprimanded and demoted, and that due to harassment and humiliation, he "sought out a constructive discharge which terminated his employment." (*Id.*, ¶'s 74.-76.). Plaintiff avers that Defendants' willful pattern of discrimination and unlawful retaliation constituted extreme and outrageous conduct . (*Id.*, ¶ 78.).

In his Sixth Cause of Action, Plaintiff claims that Defendants GBS, Snyder and Essig intentionally interfered with a contractual relationship. Plaintiff avers that he had an express and/or implied contractual relationship for continued employment with Defendants and that they induced

him to seek "constructive discharge and removal from employment" by wilfully giving false statements about him to others, *i.e.* that he was "a non-cooperative employee." (*Id.*, ¶'s 84.-86.). Plaintiff states that Defendants' conduct caused intentional interference with his employment relationship with them. (*Id.*, ¶ 87.).

In his Seventh Cause of Action, Plaintiff avers that Defendants AGC, GBS, Snyder and Essig committed the state law tort of abuse of process by encouraging intimidation, harassment and retaliation against him which lead to his constructive discharge. (*Id.*, ¶'s 95.-96.).

In his Eighth Cause of Action, Plaintiff claims that Defendants AGC, GBS, Snyder and Essig defamed him by stating that his assigned client, Everest, was unhappy with him when the client previously told Plaintiff and his team members that it was happy with him and that the team did good work. (*Id.*, ¶ 102.).

In his Ninth (and final) Cause of Action, Plaintiff claims that Defendants AGC, GBS, Snyder and Essig committed fraud by leading him to believe that since he sought a constructive discharge, he waived his right to Pennsylvania unemployment compensation benefits and waived any claim he may have against them. (*Id.*, ¶ 114.).[7]

---

[7]As Defendants point out (Doc. 8, p. 4), Plaintiff does not specifically claim in his Causes of Action that his constrictive discharge by Defendants was due to unlawful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. However, in ¶118. of the Complaint, "Additional Parties and/or Claims", Plaintiff requests leave to amend his pleading to add, in part, a claim under the ADEA "if additional investigation and discovery elicits information that supports such claims." Thus, we agree with Defendants that Plaintiff 's Complaint does not contain an ADEA claim. In addition, we do not find that Plaintiff alleges unlawful age discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. Section 952, *et seq*.

Plaintiff avers that the alleged violations of Title VII by Defendants AGC and GBS constituted age discrimination which entitles him, in part, to compensatory damages for economic loss and non-economic loss, emotional distress, humiliation, pain and suffering, and mental anguish.   (*Id.*, ¶ 119.).

In regards to his state law claims, Plaintiff seeks this Court to exercise its supplemental jurisdiction.[8]

Also as relief, Plaintiff requests a declaratory judgment that Defendants violated Title VII by discriminating against him due to his age, as well as injunctive relief, including back pay, benefits and reinstatement to a position he would have obtained without age discrimination, and compensatory and punitive damages.   (Doc. 1, last two pages).

## III.  Motion to Dismiss Standard.

The Court in *O'Connell v. Sobina*, 2008 WL 144199, *2 (W.D. Pa.), set forth the new standard to dismiss, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. –, 127 S. Ct. 1955 (2007), as  follows:

> As the United States Supreme Court recently held in
> *Bell Atlantic Corp. v. Twombly*, [550] U.S. —, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (May 21, 2007), a complaint must
> be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege
> "enough facts to state a claim to relief that is plausible on
> its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard

---

[8]The Court can exercise supplemental jurisdiction over Plaintiff's pendent state law claims, Counts Three through Nine, if his federal claims (Title VII) are permitted to proceed.  If Plaintiff's federal claims are dismissed, this Court should not exercise jurisdiction over Plaintiff's pendent state claims contained in his Complaint. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130 (1966).

> set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99,
> 2 L.Ed.2d 80 (1957)).  The court must accept as true all
> all allegations of the Complaint and all reasonable factual
> inferences must be viewed in the light most favorable to plaintiff.
> *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944
> (3d Cir. 1985).  The Court, however, need not accept inferences
> drawn by plaintiff if they are unsupported by the facts as set
> forth in the complaint.  *See California Pub. Employee Ret. Sys. v.
> The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing
> *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906
> (3d Cir. 1997)).  Nor must the court accept legal conclusions
> set forth as factual allegations.  *Bell Atlantic Corp.*, 127 S.Ct.
> at 1965 (citing *Papas an v. Allain*, 478 U.S. 265, 286, 106 S.Ct.
> 2932, 92 L.Ed.2d 209 (1986)).  "Factual allegations must be
> enough to raise a right to relief above the speculative level."
> *Bell Atlantic Corp.*, 127 S.Ct. at 1965.  Although the United
> States Supreme Court does "not require heightened fact pleading
> of specifics, [the Court does require] enough facts to state a claim
> to relief that is plausible on its face."  *Id* at 1974.

*See also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 588 (M.D. Pa. 2008).

**IV. Discussion**.

Initially, Defendants move to dismiss under Rule 12(b)(5) and maintain that Plaintiff has failed to properly serve the in-state Defendants, Essig, Snyder and GBS, with his Complaint under Rule 4.  Defendants have also moved to dismiss Plaintiff's entire Complaint based upon Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's age, gender and race  discrimination (federal) claims contained in his First and Second Causes of Action, under Title VII and § 1981, fail to state a claim upon which relief can be granted.  Defendants also argue that six of Plaintiff's seven state law claims (all except for his breach of contract and promissory estoppel claim, Third Cause of Action), are barred by the statute of limitations ("SOL"), and that six of his state law claims (all except for his intentional interference with a contractual relationship claim, Sixth Cause of Action), are preempted

by the PHRA.  Defendants contend that Plaintiff has failed to state sufficient facts with respect to his gender and race discrimination claims, and that he has failed to exhaust his administrative remedies with respect to his race and gender discrimination claims and his disparate impact age discrimination claim. Defendants further argue that Plaintiff has not sufficiently stated a constructive discharge claim, and that he has not sufficiently stated facts to support his state law claims for breach of contract and promissory estoppel, interference with a contractual relationship claim, abuse of process claim, and fraud claim.  (Doc. 8, pp. 4-6).   Finally, as stated, Defendants argue that ¶ 1. of Plaintiff's Complaint should be stricken under Rule 12(f).

     1.  *Improper Service of Process under Rule 4*

     Defendants state, and their Ex. B (Doc. 5-4), as well as Plaintiff's Doc. 3, show that Plaintiff mailed his Complaint and the Summons without the Notice and Request to Waive Service of a Summons to all Defendants, *via* certified mail-return receipt requested.  Defendants argue that Plaintiff has failed to properly serve the three in-state Defendants, Snyder, Essig and GBS. Defendants seem to concede that Plaintiff properly served out-of-state Defendant AGC, located in Illinois.  (Doc. 8, p. 7).  Plaintiff states that he filed his proof of service with the Clerk of Court, and that he received back "*via* the United States mail the Domestic Return Receipts from each Defendant." (Doc. 7, p. 3, and Doc. 3).  Plaintiff states that he filed a proper proof of service with the Court under Rule 4(l)(1).  (Doc. 3).  Plaintiff concedes that no Defendant was personally served and that Defendants did not waive service.  Plaintiff requests that if service was not proper, he be permitted to properly serve Defendants under Rule 4(m).

In *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, * 12 (M.D. Pa.), the Court stated:

> Rule 12(b)(5) permits dismissal when the plaintiff has failed to effect service of process in a fashion compliant with Rule 4.  Under Rule 4, a plaintiff must arrange for personal service of a summons and complaint upon each defendant unless the defendant waives service. [FN29] *See id.* R.4(c)(1),(2); 4(d); 4(e).  The plaintiff *must* arrange for personal service in the absence of a waiver, and service *must* be performed by "[a]ny person who is at least 18 years old and not a party" to the action.  *Id.* R. 4(c)(2).

> > FN29.  Rule 4(e) establishes the means through which a plaintiff may perform personal service of process.  The rule allows a plaintiff to serve the complaint in any manner authorized by the "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed.R.Civ.P. 4(e)(1).  In Pennsylvania, Rule 400-430 of the Pennsylvania Rules of Civil Procedure govern service of process.  Rule 4(e) also allows the plaintiff to serve process by arranging for personal delivery, by leaving it with someone of suitable age at the defendant's home, or by delivering it to the defendant's authorized agent for service of process.  *Id.* R. 4(e)(2).

> The plaintiff may seek a waiver of service from the defendant by transmitting a waiver request via first class mail. [FN30] *Id*. R. 4(d)(1).  If the defendant executes the waiver, the plaintiff must file it with the court and is excused from effectuating personal service.  *Id.* R. 4(d)(4).  A defendant who refuses to execute the waiver is entitled to receive personal service of process but must reimburse the costs that the plaintiff incurs in performing it.  *Id.* R. 4(d)(2).  If a plaintiff fails to serve process as set forth in Rule 4, a court possesses discretion either to dismiss the complaint or to quash service and grant plaintiff additional time to serve the summons and complaint.  *See Mitchell v. Theriault*, 516 F.Supp.2d 450, 457 (M.D. Pa. 2007); *see also* Fed.R.Civ.P. 4(m). "However, dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.  In such instances, the district court should at most, quash service, leaving the plaintiff[ ] free to effect proper service." *Mitchell*, 516 F.Supp.2d at 457 (quoting *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992)).

12

> FN30.  The request must contain all information enumerated
> in Rule 4(d)(1).

We agree with Defendants that Plaintiff's service with his Complaint and Summons, by certified mail, on in-state Defendants Snyder, Essig and GBS, without a Notice and Request to Waive Service of a Summons, on July 16, 2008 (Doc. 5, Ex. B & Doc. 3),  is not proper service on the individual defendants under Fed.R.Civ.P. 4(e) and is not proper service on GBS under Fed.R.Civ.P. 4(h). *fn [ Fed.R.Civ.P. 4(h) provides in pertinent part as follows:

> Unless federal law provides otherwise or the defendant's waiver
> has been filed, a domestic or foreign corporation, or a partnership
> or other unincorporated association that is subject to suit under a
> common name, must be served:
>
> (1) in a judicial district of the United States:
>
> > (A) in the manner prescribed by Rule 4(e)(1) for
> > serving an individual; or
> >
> > (B) by delivering a copy of the summons and of the
> > complaint to an officer, a managing or general agent,
> > or any other agent authorized by appointment or by law to
> > receive service of process and  - - if the agent is one
> > authorized by statute and the statute so requires  - -
> > by also mailing a copy of each to the defendant;

As the Court stated in *Sullivan v. Doe*, 2007 WL 4531029,  * 3 (E.D. Pa. 2007):

> Federal Rule of Civil Procedure 4(e) governs service upon
> an individual within a judicial district of the United States
> as follows:
>
> Unless otherwise provided by federal law, service upon an
> individual from whom a waiver has not been obtained and
> filed, other than an infant or an incompetent person, may be
> effected in any judicial district of the United States:

> (1) pursuant to the law of the state in which the district court is located, or in which service is effected for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.
>
> Fed.R.Civ.P. 4(e) (amended Dec. 1, 2007).  FN3.  The service effectuated by Plaintiff, in this case, does not comply with subsection (1) since, under Pennsylvania law, service by mail upon individuals within the state is not permitted.  *See* Pa. R.Civ.P. 402; see also *Spencer v. Eristoff*, Civ.A.No. 06-0174, 2006 WL 2346418, at * 3 (M.D. Pa. Aug. 11, 2006) (recognizing that Pennsylvania law does not permit service by mail), *appeal dismissed*, 224 Fed.Appx. 173 (3d Cir. 2007).  Likewise, subsection (2) of Rule 4 does not authorize service by mail upon an individual.  Fed.R.Civ.P. 4(e)(2).
>
> > FN3.  The Federal Rules of Civil Procedure, including Rule 4, were amended on April 30, 2007.  The amended section contains no substantive changes to the waiver rules, but simply revises and clarifies the language used.  The amended Rule 4 is effective as of December 1, 2007 . . . . .

*See Spencer v. Eristoff*, 2006 WL 2346418, *2-*3 (M.D. Pa.), *appeal dismissed*, 224 Fed. Appx. 173 (3d Cir. 2007).

As Defendants state (Doc. 8, p. 7), under the circumstances of this case in which Plaintiff did not seek a waiver of service from Defendants, Plaintiff was required to personally serve Defendants Snyder, Essig and GBS, and Plaintiff's service on these in-state Defendants was not proper.  *See Spencer, supra* ("Plaintiff failed to effect service of process upon the Defendants  as prescribed by

14

Fed. R. Civ. P. 4(e) because service of summonses and Complaint *via* certified mail addressed to [Defendants], without more, was not sufficient to confer personal jurisdiction upon either Defendant."). The *Spencer* Court concluded as follows:

> In this case, Plaintiff apparently did not attempt to seek a wavier of service from the Defendants because no notice and request form was included in the envelope containing the summonses and complaint. . . . Therefore, Plaintiff was required to effect service appropriately under Rule 4(e), which, as aforementioned, he failed to do. Accordingly, because the Plaintiff failed to obtain personal jurisdiction over the Defendants, the complaint shall be dismissed."

*Id.*, *4.

As stated, Plaintiff requests the Court to allow him to correct his service if it is found to be improper. Plaintiff states that the Court must allow him to properly serve Defendants to resolve the improper service of process issue. (Doc. 7, p. 3). Significantly, Plaintiff did not correct the service on the three in-state Defendants even after he was on notice from Defendants since August 5, 2008, that he improperly served them. However, as in the *Kalomiris* case in which its *pro se* Plaintiff improperly served his Complaint on in-state Defendants via certified mail, did not secure a waiver of service from Defendants, and did not personally serve Defendants, we will recommend that the Court quash service as to Defendants Snyder, Essig and GBS, and grant Plaintiff an additional thirty (30) days within which to properly serve these Defendants. Failure of Plaintiff to properly serve the stated three Defendants within the stated time period, should result in a dismissal of his claims against them. 2009 WL 73785, * 13.[9]

---

[9]Since we recommend below that Defendants Snyder and Essig be dismissed entirely from this action, if the Court adopts this recommendation, there is no need for Plaintiff to properly serve these two Defendants.

15

   *2.  SOL Bar to Plaintiff's State Law Claims Contained in Fourth, Fifth, Sixth,
   Seventh, Eighth and Ninth Causes of Action*

Defendants next argue that six of Plaintiff's seven state law claims (all except for his breach of contract and promissory estoppel claim, Third  Cause of Action), are barred by the applicable state statutes of limitations.  (Doc. 8, pp. 7-8).

We find that Defendants have properly stated all of the applicable state SOL's with respect to Plaintiff's common law claims contained in his Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Causes of Action.  (*Id*.).  Further, Plaintiff does not dispute the SOL's which Defendants have identified.  (Doc. 7).

In *Stauffer v. Bell Atlantic*, 2002 WL 32349886, *5, n. 4 (E.D. Pa.), the Court stated:

> Plaintiff's eight state law claims are dismissed because they are all barred by the applicable statute of limitations. [FN4] This court, therefore, need not discuss the merits of Plaintiff's Complaint.
>
> > FN4.  Defendant terminated Plaintiff on February 29, 1996. Plaintiff filed his complaint on June 13, 2001.
> >
> > A.  The statue of limitations for a breach of contract action in Pennsylvania is four years.  *See* 42 Pa.C.S.A. § 5525(8).  Promissory estoppel claims are also subject to a four-year limitations period.  *Id.* The latest Plaintiff could have brought his contract claim is February 29, 2000.
> >
> > B.  The statute of limitations for a negligence action in Pennsylvania is two years.  42 Pa.C.S.A. § 5524(3).
> >
> > C.  The statute of limitations for the tort of intentional infliction of emotional distress is two years.  *Fala v. Perrier Group of Am.*, 2000 WL 688175 at * 14 (E.D. Pa. May 25, 2000); *See also* 42 Pa.C.S.A. § 5524(7) (two-year statute of limitations for all non-specific tortuous acts).

      D.  Under Pennsylvania law, the statute of limitations for an action for intentional interference with a contractual relationship is two years.  42 Pa.C.S.A. § 5524(7).

      E.  The statute of limitations for an abuse of process action in Pennsylvania is two years.  42 Pa.C.S.A. § 5524(1).

      F.  The statute of limitations for a claim of defamation in Pennsylvania is one year.  42 Pa.C.S.A. § 5523(1).

      G.  Under Pennsylvania law, a cause of action for fraud must be asserted within two years of the alleged fraudulent act.  42 Pa.C.S.A. § 5542(7).

We agree with Defendants that Plaintiff's common law claims raised in his Fourth through Ninth Causes of Action accrued on May 1, 2006, when Plaintiff alleges he was constructively discharged from his position, and that this date is when Plaintiff's SOL commenced to run with respect to his stated common law claims.  Plaintiff himself concedes that "the violations, which Plaintiff believes, are actionable, were committed by the Defendant's (sic), and discovered in (sic) May 1, 2006."  (Doc. 7, p. 2).

Plaintiff argues that the SOL with respect to his common law claims raised in his Fourth through Ninth Causes of Action should be equitably tolled and  he states, without elaboration, that he "can demonstrate facts that would support and substantiate, that he in, '**an extraordinary way,**' even while being diligent, was prevented in asserting his civil rights violation claims." (*Id*.)(emphasis original).  Plaintiff does not explain how he was prevented from asserting any of his state law claims against Defendants in a timely manner, and he admits that he discovered these causes of action on May 1, 2006.

17

The *Stauffer* Court stated:

> "Further, the applicable statutes of limitations for Plaintiff's
> state law claims should not be equitably tolled.  There are three
> principal situations in which equitable tolling may be applied:
> (1) where defendant has actively misled the plaintiff respecting
> the plaintiff's cause of action; (2) where the plaintiff in some
> extraordinary way has been prevented from asserting his or her
> rights; or (3) where the plaintiff has timely asserted his or her rights
> mistakenly in the wrong forum.  *Shiver v. Levin, Fishbein, Sedran &
> Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)."

*Id.*, * 5.

As mentioned, Plaintiff does not offer any explanation or factual support for his contention that the applicable SOL's with respect to his common law claims raised in his Fourth through Ninth Causes of Action should be equitably tolled.  As the *Stauffer* Court stated, "[i]n order to equitably toll the limitations period under the discovery rule, 'the Complaint must set forth the time and circumstances of the discovery, the reasons why discovery was not made earlier, and the diligent efforts which Plaintiff undertook in making or seeking such discovery.'" *Id.* (citation omitted).[10]

As in *Stauffer*, our Plaintiff's pleading does not support equitable tolling of the SOL's applicable to his stated common law claims.  In fact, as stated, Plaintiff admits that he discovered the causes of action against Defendants on May 1, 2006.  (*Id.*).  Plaintiff's Complaint also indicates that he discovered his common law causes of action against Defendants on the stated date.  Plaintiff's EEOC Charge attached to his Doc. 7 Brief shows that the alleged age discrimination by Defendants occurred on May 1, 2006.  (Doc. 7, Exs. A and B).

---

[10]In *Mathews v. Hermann*, 2008 WL 1914781, * 19, n. 20 (E.D. Pa.), the Court noted that Plaintiff's claim for IIED was not eligible for equitable tolling similar to Plaintiff's Title VII and ADA claims.

Additionally, Plaintiff argues that his defamation claim (Eight Cause of Action) is not time barred since "Defendant's (sic) continues (sic) to 'black ball' the Plaintiff from getting any jobs or job offers", and that Defendants' alleged actions are a "continuous trespass" upon him.  (*Id.*, p. 5). We do not find that Plaintiff's Complaint contains any such allegations.  (Doc. 1, Eighth Cause of action).  Plaintiff alleges that he was constructively discharged by Defendants on May 1, 2006, and he filed his present Complaint on July 14, 2008.  (Doc. 1).

We find that Plaintiff's common law claims raised in his Fourth through Ninth Causes of Action should not be equitably tolled, and that Defendants' Motion to Dismiss should be granted with respect to these claims since they are barred by the applicable Pennsylvania SOL's.  *See Stauffer, supra*; *Mathews v. Hermann*, 2008 WL 1914781, * 19.

   *3.  PHRA Preemption of Common Law Claims Contained in Third, Fourth, Fifth
   and Seventh Causes of Action*

Since we find that Plaintiff's common law claims raised in his Fourth through Ninth Causes of Action are time barred, we only address Defendants' next argument regarding preemption by the PHRA with respect to Plaintiff's Third Cause of Action, *i.e.* his common law claim for breach of contract and/ or promissory estoppel.  (Doc. 8, pp. 8-11).  As indicated above, Plaintiff's state law claim in his Third Cause of Action is four years, and thus it is not time barred as are his other state law claims.  *See* 42, Pa.C.S.A. §5525(8); *Stauffer, supra*, *5, n. 4.

In his Third Cause of Action asserted only against Defendants AGC and GBS, Plaintiff alleges that he was terminated without cause since Defendants "did not properly determine whether or not there was cause," and since Defendants "did not follow its (sic) policies, practices and procedures with regard to age discrimination." (Doc. 1, ¶ 62.).  Plaintiff avers that Defendants AGC

19

and GBS promulgated express written statements of employment which contained policies and procedures, and that it was provided to all of their employees, including Plaintiff.  (*Id.*, ¶ 50.). Plaintiff avers that Defendants AGC and GBS represented both orally and in writing that they would treat their employees in a fair, impartial and nondiscriminatory manner, and that they would investigate allegations of work place age discrimination.  (*Id.*, ¶'s 51.-54.).

Plaintiff also alleges that Defendants AGC's and GBS's "breach of age discrimination" by failing to follow their policies and procedures directly caused his injuries and damages.  (*Id.*, ¶ 64.). Plaintiff further seems to allege that Defendants AGC and GBS breached their promise (and obligation) to him by failing to abide by their employment policies with respect to age discrimination, which policies he reasonably relied upon when he accepted a job with Defendants.

Defendants argue that Plaintiff's breach of contract claim is based on age discrimination, and as such, it is preempted by the PHRA.  Initially, we agree with Defendants, based on the above, that the act which supports Plaintiff's Third Cause of Action, *i.e.* his common law claim for breach of contract and/ or promissory estoppel, is only an act of age discrimination.

In support of his breach of contract and/or promissory estoppel claim, Plaintiff states as follows in his Brief:

> My May 1 [2006] demotion was to a position with lower pay, less prestige, and an unreasonable caseload.  I believe that I was demoted to force me out of employment, and that the employer was motivated to do so on account of my age and my complaints about my non-selection to the supervisory positions that were filled by younger workers.  Because of the employer's actions described above, I resigned on May 1, 2006.
>
> I believe that my non-selection to the open supervisor positions constitutes discrimination based on age.

> I believe that my resignation is a constructive discharge that
> constitutes discrimination based on age and in retaliation for my
> questioning why open supervisor positions were filled by younger
> workers with lesser q qualifications than mine.

(Doc. 7, p. 4).

We find that Plaintiff has not alleged separate facts to independently support his stated breach of contract claim other than the act of age discrimination.  Plaintiff's common law claim for breach of contract  and/or promissory estoppel is based on Defendants' alleged failure to follow their age discrimination policies and their written promises to treat employees fairly and in a nondiscriminatory manner.  Plaintiff alleges that Defendants AGC and GBS breached this implied contract based on their written policies by discriminating  against him due to his age.  Plaintiff essentially alleges that an implied contract between him and Defendants AGC and GBS existed based on the  terms of their written policies and procedures.  These allegations constitute a set of facts that must be proven which are not separate from the alleged discriminatory conduct which is prohibited by the PHRA.  While Plaintiff must prove as part of his breach of contract claim the existence of an implied contract, he cannot prevail on this claim without showing that Defendants discriminated against him due to his age in violation of the implied contract.  Thus, Plaintiff's breach of contract claim is not based on a set of facts independent and separate from an age discrimination claim under the PHRA.

Even though there are some separate set of facts Plaintiff has alleged with respect to his common law claim for breach of contract  and/ or promissory estoppel, namely, that an implied contract existed, Plaintiff still must establish that PHRA-prohibited discriminatory conduct occurred in order to prove this claim.  While Plaintiff must show that an implied contract existed with respect

to his breach of contract claim, he must also show that Defendants breached it by discriminating against him due to his age.  The gist of Plaintiff's breach of contract claim is age discrimination in employment, which is covered by the PHRA.

Thus, the PHRA preempts Plaintiff's breach of contract claim.  *See  Lerew v. AT&T*, 2008 WL 80055, *2 (M.D. Pa.) (court found that since Plaintiff's allegations in the negligent supervision claim were not separate from the acts supporting Plaintiff's PHRA claim and since the allegations "constituted PHRA-prohibited discriminatory conduct," the negligent supervision claim was preempted by the PHRA)(citing *McGovern v. Jack D's, Inc.*, 2004 WL 228667 (E.D. Pa. Feb. 3, 2004)("explaining: '[W]here a statute provides a remedy for a certain type of injury, a common law action designed to redress the same injury is rendered superfluous'").  The *Lerew* Court stated, "the PHRA preempts negligent supervision claims 'when ... such claims arise from, and form an integral part of, the PHRA-prohibited conduct.'" *Id*. (citing *Watkins v. Rite Aid Corp.*, 2006 WL 2085992 (M.D. Pa. July 25, 2006).  The *Lerew* Court also stated that its "preemption analysis focuses on the similarity of the acts supporting the PHRA and [common law claims], not [Defendant's] motive for failing to investigate [Plaintiff's] complaint." *Id*. (citation omitted).

In *Belverena v. Central Parking Sys., Inc.*, 2005 WL 2850343, *2 (E.D. Pa.), the Court stated:

> "If the acts supporting a common law cause of action are only acts
> of discrimination, the common law claim is preempted by the
> Pennsylvania Human Relations Act."  *Styles v. Philadelphia Elec. Co.*,
> Civ. No. 93-4593, 1994 U.S. Dist. LEXIS 7486, at *7 - *8 (E.D. Pa. 1994)
> (Buckwalter, J.) (citing *Keck v. Commercial Union Ins. Co.*, 758 F.Supp.
> 1034, 1039 (M.D.  Pa. 1991)).  Although CPSI is correct in asserting
> that the PHRA preempts other state law causes of actions, the PHRA
> does not preempt causes of action arising from a separate set of
> facts. "[Third Circuit] courts have also recognized that where a claim
> for breach of contract is grounded on conduct other than the alleged

> discriminatory conduct, that claim is not barred by the PHRA."
> *Brennan v. National Telephone Directory Corp.*, 850 F.Supp. 331,
> 344-45 (E.D. Pa. 1994). *See also Deramo v. Consolidated Rail Corp.*,
> 607 F.Supp. 100 (E.D. Pa. 1985) (age discrimination in employment
> case in which the court specifically held that plaintiff's claim for
> breach of contract was not preempted by the PHRA).

The *Belverena* Court concluded that, "[a]ccepting [Plaintiff 's] pleaded facts as true, [Plaintiff] could be entitled to relief under a breach of contract claim, and because it requires a separate set of facts, the claim is not necessarily preempted by the PHRA." *Id.*

Plaintiff Witmer alleges that Defendants AGC and GBS breached an implied employment contract by discriminating against him because of his age in violation of the written policies they gave their employees. Plaintiff avers that Defendants AGC and GBS promised their employees to abide by their written policies including the policy not to discriminate against employees due to their age and the policy to properly investigate claims of age discrimination. For Plaintiff Witmer to succeed on his breach of contract claim, similar to the Plaintiff in *Belverena*, he must show that an implied contract existed. However, to succeed on his claim, Plaintiff Witmer must also necessarily show that Defendants AGC and GBS discriminated against him due to his age and that they failed to investigate his claim of age discrimination in violation of this implied contract. Plaintiff Wither's breach of contract claim does not essentially require a set of facts to be proven separate from an age discrimination claim which is prohibited by the PHRA. Thus, we find that Plaintiff Witmer's breach of contract claim is preempted by the PHRA.[11]

---

[11]The PHRA prohibits discrimination against persons due to their race, color, religion, sex, national origin, age (40 and older), etc. Prohibited discrimination includes all aspects of employment including termination. *See Marion v. City of Phila./Water Dept.*, 161 F.Supp.2d 381, 388 (E.D. Pa. 2001).

Therefore, we will recommend that Defendants' Motion to Dismiss Plaintiff's Third Cause of Action for common law breach of contract and/or promissory estoppel be granted.[12]

Accordingly, we will recommend that all of Plaintiff's state law claims, Third through Ninth Causes of Action, be dismissed. We will recommend that the two individual Defendants, Essig and Snyder, be dismissed from this case if the Court dismisses all of Plaintiff's state law claims since there will be no remaining claims stated against them.

Plaintiff's two Title VII claims as against Defendants AGC and GBS still must be addressed.

4. *Title VII Claims of Race and Gender Discrimination, and Disparate Impact Age Discrimination*

Defendants argue that while Plaintiff references race and gender discrimination in his two Title VII claims, First and Second Causes of Action, he does not allege any facts to support such claims. (Doc. 8, pp. 11-12). Plaintiff repeatedly states in his Complaint, and in his Brief, that he is a white male over 40 years old, and that he was part of a protected class based on his age (*i.e.* 52). While he also states in his lengthy (over 4 pages) ¶1. of his Complaint, as well as in ¶ 2., that he is "an American white/part American Indian male," we agree with Defendants that Plaintiff does

---

As stated, Plaintiff has not asserted either an ADEA claim or a PHRA claim in his Complaint. Regardless, we agree with Defendants that Plaintiff's exclusive remedy for his breach of contract claim for age discrimination in employment is provided by the PHRA. (Doc. 8, p. 10).

[12]We do not address Defendants' contention (Doc. 8, pp. 8-9) that Plaintiff's common law claims contained in his Fourth, Fifth, and Seventh Causes of Action are preempted by the PHRA since we have found these three common law claims to be time barred.

not allege any specific facts in his pleading to support any claim of race and gender discrimination.[13] We find that Plaintiff's allegations with respect to his Title VII claims involve age discrimination.

Further, we agree with Defendants that Plaintiff did not exhaust his claims of race and gender discrimination, and his claims of disparate impact age discrimination.  (Doc. 8, pp. 12-13).  Both Defendants' exhibit (Doc. 8, Ex. A) and Plaintiff's own exhibits (Doc. 7, Exs. A and B), show that Plaintiff only filed an EEOC Charge against Defendant GBS for age discrimination and retaliation.

In his attachment to his EEOC Charge, Plaintiff stated as follows:

> My May 1 [2006] demotion was to a position with lower pay, less prestige, and a unreasonable caseload.  I believe that I was demoted to force me out of employment, and that the employer was motivated to do so on account of my age and my complaints about my non-selection to the supervisory positions that were filled by younger workers.  Because of the employer's actions described above, I resigned on May 1, 2006.
>
> I believe that my non-selection to the open supervisor positions constitutes discrimination based on age.
>
> I believe that my resignation is a constructive discharge that constitutes discrimination based on age and in retaliation for my questioning why open supervisor positions were filled by younger workers with lesser qualifications than mine.

(Doc. 8, Ex. A).

We find that Plaintiff's EEOC Charge was based on race discrimination and retaliation. Plaintiff did not complain to the EEOC that Defendants discriminated against him on the basis of

---

[13]We also agree with Defendants that Plaintiff's lengthy (over 4 pages)  ¶1. of his Complaint is in clear violation of Rule 8 and should be stricken under Rule 12(f) since it is impossible for Defendants to answer ¶ 1. (Doc. 8, p. 20).

his race and gender, and he did not raise a claim for disparate impact age discrimination.

Plaintiff must exhaust his administrative remedies with respect to his Title VII claims and only after exhaustion does the district court have jurisdiction over his Title VII action. *See Laye v. Porter,* 2006 WL 1617777, *4(W.D. Pa.).   Further, "[i]t is a well-established principle that the allegations in a judicial complaint filed pursuant to Title VII are limited by charges of discrimination 'like or related to' the allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the [EEOC]". *Id. See also Zahavi v. PNC Financial Services Group, Inc.,* 2007 WL 3053090; *Zezulewicz v. Port Auth. of Allegheny County,* 290 F. Supp. 2d 583, 590-91 (W.D. Pa. 2003).

The *Laye* Court stated:

> the timely exhaustion of administrative procedures is a precondition to the maintenance of a federal employment discrimination civil lawsuit. *Brown,* 425 U.S. at 832.  The parameters of the civil action are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Sandom v. Travelers Mortg. Services, Inc.,,* 752 F.Supp. 1240, 1246 (D.N.J. 1990).  Accordingly, Plaintiff cannot choose to bypass the administrative machinery by raising new theories of recovery for the first time in a federal court action.  However, the judicial complaint may encompass any discrimination "like or reasonably related" to the allegations of the EEOC charge. *See Anton v. Perry,* 82 F.2d 1291 (3d Cir. 1996); *Waiters v. Parsons,* 729 F.2d 233, 237-38 (3d Cir. 1984).
>
> In his EEOC complaint, Plaintiff alleged that Defendant discriminated against him on the basis of his race only. The Court finds that the language in the EEOC charge fails to put either the administrative agency or Defendant on notice of Plaintiff's claims of gender discrimination and, thus, this claim could not "reasonably be expected to grow out of the charge of discrimination."

*Id.,* *4-*5.

26

Plaintiff Witmer did not allege in his EEOC Charge that Defendants discriminated against him due to his race and gender, and he did not complain of disparate impact age discrimination. There is simply no indication that Plaintiff was charging Defendants with race, gender, and disparate impact age discrimination.  Nor does Plaintiff allege any specific facts in his present Complaint with respect to these stated claims referenced in his First and Second Causes of Action.  *See Twombly*, 127 S.Ct. at 1974 (the complaint must be dismissed if it does not allege "enough facts to state a claim for relief that is plausible on its face.").

The Court in *Stauffer,* 2002 WL 32349886, *2, stated:

> Plaintiff's race and gender discrimination claims are barred as a matter of law by plaintiff's failure to first raise them with the EEOC.  "A district court may only hear Title VII claims that are either included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge."  *Owen v. Computer Sciences Corp.*, 1999 WL 43642, * 3 (D.N.J. Feb. 2, 1999) (quoting *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198 (2d Cir. 1985)).  A plaintiff may not assert matters in a suit in federal court outside the scope of an EEOC charge. *See Thomas v. Ethicon, Inc.*, 1994 WL 171345, * 6 (E.D. Pa. 1994).

> In this case, Plaintiff's EEOC charge included a claim only for age discrimination under the ADEA.  No claims for race and gender discrimination were included in the EEOC charge.  He is therefore statutorily barred from now bringing such claims in federal court. *Owen*, 1999 WL 43642 at * 8.

The *Stauffer* Court also stated:

> Although Plaintiff's Complaint makes reference to Title VII, no race or gender discrimination claims are clearly articulated in the Complaint or subsequent submissions.  The Plaintiff fails to provide an explanation of the nature of the alleged violations.  *See Owen*, 1999 L 43642 at *9. Plaintiff's claim of racial discrimination merely reiterates that Defendant has engaged in age discrimination, but mentions nothing about racial discrimination.  Similarly, his first claim, which encompasses both

gender and age discrimination, speaks only towards age discrimination, mentioning nothing about gender discrimination. Plaintiff offers no statement that could in any way give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The alleged Title VII claims, therefore, fail to meet the minimal requirements of the simplified pleading rules. *See* Fed.R.Civ.P. 8(a).

*Id.*, *3.

In light of the forgoing, we agree with Defendants that Plaintiff's gender discrimination claim and disparate impact discrimination claim in his First Cause of Action, as well as Plaintiff's complete Second Cause of Action for racial discrimination and disparate impact discrimination, should be dismissed. (Doc. 8, p. 13).

5. *Title VII Age Discrimination and Constructive Discharge Claims, First Cause of Action*

Since we have detailed Plaintiff's allegation above regarding his First Cause of Action, we do not repeat them. We find that Plaintiff should be permitted to proceed with his First Cause of Action for Title VII age discrimination. We also find that Plaintiff has sufficiently alleged facts regarding his constructive discharge claim based on age discrimination.

As stated above, Plaintiff alleges that Defendants AGC and GBS discriminated against him because of his age and that as a result he was constructively discharged from his employment on May 1, 2006. (Doc. 1, ¶ 32.).

The Court in *Zezulewicz* stated:

"a plaintiff offering indirect evidence of discrimination must first set our a prima facie case of employment discrimination. A prima facie case is established where the plaintiff (1) is a member of a protected class, (2) is qualified for a position, and (3) suffers an adverse employment decision, and (4) that others outside of the protected class were treated more favorably. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 411

28

(3d Cir. 1999)).”

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A plaintiff asserting a violation of Title VII may establish “the adverse employment action” element of a prima facie case by showing that she was constructively discharged. *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 973-74 (3d Cir. 1998). When considering a claim of constructive discharge, the court must determine “whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.” *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). As a threshold matter, then, the plaintiff must show that the employer condoned acts of discrimination.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

An employee’s subjective perceptions do not govern a claim of constructive discharge. *Duffy*, 265 F.3d at 169 (*quoting Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992)). Rather, the test we must apply is an objective one: whether a reasonable person under similar circumstances would have felt compelled to resign.

290 F. Supp. 2d at 593-94.

We find that Plaintiff has alleged sufficient facts to support his Title VII age discrimination claim. We also find that Plaintiff has alleged he suffered adverse employment actions which presented intolerable conditions, and that a reasonable person under similar circumstances would have felt compelled to resign. We will recommend that Defendants’ Motion to Dismiss Plaintiff’s First Cause of Action with respect to his Title VII claims be denied.

To the extent that Plaintiff avers that his First Cause of Action is also under 42 U.S.C. § 1981 in addition to Title VII (Doc. 1, ¶’s 29., 37. and 39.), we do not find such a claim is stated. “[Section] 1981 may provide the basis for a claim of employment discrimination or retaliation. However, its scope is limited to instances of race discrimination.” *Zezulewicz*, 290 F. Supp. 2d at

29

598 (citation omitted).  As discussed above, we do not find that Plaintiff has sufficiently alleged race discrimination in his Complaint.   Thus, we will recommend that Plaintiff's § 1981 claim be dismissed. [14]

## V.  Recommendation.

Based on the above, it is respectfully recommended that the Defendants' Motion to Dismiss **(Doc. 5)** be granted with respect to Plaintiff's Second through Ninth Causes of Action, and that it be denied with respect to Plaintiff's Title VII claims contained in his First Cause of Action.   It is recommended that Plaintiff's § 1981 claim in his First Cause of Action be dismissed.  Also, it is

---

[14]Plaintiff may also have claims under the ADEA and PHRA.  However, as mentioned, he did not raise any such claims in his lengthy Complaint.  While Plaintiff requests leave of court to amend his Complaint to add any additional claims which may be revealed through discovery (Doc. 1, ¶ 118.), Plaintiff's allegations in his original Complaint may have been sufficient to support claims under the ADEA and PHRA.  *See Marion, supra.*  Further, to date, Plaintiff has not filed a motion to amend his complaint under Rule 15.

In *Duffy v. Paper Magic Group, Inc.*, 265 F. 3d 163, 167 (3d Cir. 2001), the Third Circuit set forth the following elements to establish an ADEA age discrimination claim:

> The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions or privileges of employment on the basis of their age.  *See* 29 U.S.C. § 623(a)(1).  Age discrimination may be established by direct or indirect evidence.  *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).  When evaluating ADEA discrimination claims based on indirect evidence, a plaintiff may establish a prima facie case of age discrimination under the ADEA by demonstrating that she: (1) was a member of a protected class, i.e., that she was over forty, (2) is qualified for the position, (3) suffered an adverse employment decision, (4) and was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination.  *See id.* at 973.

recommended that Defendants Essig and Snyder be dismissed from this case.   Further, it is recommended that Plaintiff be directed to properly serve Defendant GBS with his Complaint.

Finally, it is recommended that this case be recommitted to the undersigned solely for further proceedings regarding Plaintiff's remaining Title VII claims raised against Defendants AGC and GBS in his First Cause of Action.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 2, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHUCK E. WITMER, SR.,                    :        CIVIL ACTION NO. **1:08-CV-1329**
                                         :
              Plaintiff                  :
                                         :        (Chief Judge Kane)
          v.                             :
                                         :        (Magistrate Judge Blewitt)
ARTHUR J. GALLAGHER & CO.,               :
et al.,                                  :
                                         :
              Defendants                 :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 2, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with
instructions.


                                        s/ Thomas M. Blewitt
        _____
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: March 2, 2009**